### THE MEXICAN PRINCE.

### STOFFREGAN et al. v. THE MEXICAN PRINCE.

#### (District Court, S. D. New York. October 14, 1895.)

ADMIRALTY—PRACTICE—INTERROGATORIES ANNEXED TO ANSWER TO DEFINE THE ISSUE.

In a suit for damage to cargo, the libel stated a contract, by bill of lading, to deliver the cargo in good order, and the failure to do so. The defendant set up numerous exceptions in the bill of lading, as well as the Harter act of 1893, and averred that the loss happened from a failure to close the valve of No. 3 tank in the necessary discharge of one of the ballast tanks on the voyage, and annexed to the answer interrogatories under rule 32 of the supreme court in admiralty, calling upon the libelants to specify any charges of negligence, other than that alleged in the answer, or of unseaworthiness, or of lack of due diligence in equipping the ship, if any such matters were relied on. On exceptions to the interrogatories: *Held*, that the libel being evidently designed to avoid stating any particulars of the claim, in the first instance, and the absence of any other appropriate means for ascertaining and defining the issue to be tried, the interrogatories should be allowed.

These were three libels filed by Charles Stoffregan and others against the steamship Mexican Prince to recover damages to cargo. The cause was heard upon exceptions filed by the libelants to certain interrogatories annexed to the answer.

George A. Black, Wing, Putnam & Burlingham, and Carter & Ledyard, for libelants.

Convers & Kirlin, for claimants.

BROWN, District Judge. The above libels were filed to recover damages to coffee stowed in one of the water tanks of the Mexican Prince upon a voyage from Brazil to New York. The libels averred the shipment under bills of lading reciting the receipt of the coffee in good condition, and an agreement to deliver it in like good order and condition; whereas, in fact, it was not delivered in like good order, or to the full amount thereof; that the shipments were short delivered and a portion thereof in a damaged condition.

The answer avers that the coffee damaged or lost was stowed in No. 3 starboard and port tanks; that the No. 2 tank immediately ahead having been previously filled with water for ballast, it became necessary on the voyage to pump out that water, and that the damage and loss in question resulted from the omission to close the valve of No. 3 tank before opening the valve in No. 2 tank and re-

leasing the water in the pipe line; that the water running into tank 3 caused the bags of coffee to swell and burst, and started rot and mould; that the tanks and valves were all in good order, and the coffee properly stowed; and that before emptying tank No. 2 it could have been ascertained by due diligence whether the valve connecting tank 3 was properly closed, and if it was not closed, that the tank should have been emptied from the port side. The answer then avers that the bills of lading contained numerous exceptions, among them several stated verbatim, including "loss or damage arising from negligence of the master or mariners, breakage, damage, stowage, defects in hull, machinery, outfit or appurtenances, however caused, including the wrongful act, default, negligence, or error in judgment of the owners, master, officers, mariners, or crew, &c., or unseaworthiness at the beginning of the voyage, provided all reasonable means have been taken to provide against such unseaworthiness; and that the contract should be governed by the law of the flag of the ship carrying the goods"; that the vessel was British, carrying the British flag; also that the owner had used due diligence to make the ship seaworthy, properly manned and equipped for the voyage; that the damage was within the exceptions above referred to, and also that the vessel was exempt under the so-called "Harter Act," approved February 13, 1893.

Annexed to the answer were interrogatories in effect calling upon the libelants to answer at what date they became the owners of the goods; if they were not entered at the customhouse as imported under the bills of lading referred to in the libel and answer; and if the bill of lading did not contain the exceptions alleged in the answer; also whether any unseaworthiness or claim of negligence was intended to be shown, and if so, calling for a statement of the particulars of any such claim; and also whether the exceptions of negligence in the bills of lading were not valid under the English law. These interrogatories have been excepted to as irrelevant, and not proper subjects of interrogatories.

If it is true, as the answer alleges, that the bills of lading referred to in the libels contained the exceptions alleged in the answer, the libels are evidently evasive, and must be presumed to have been designed to avoid bringing out in the pleadings the real points in litigation. This is not a compliance with the intent of the twenty-third rule of the supreme court in admiralty. I do not see that the defendant has any other remedy, however, than by interrogatories, annexed to the answer. Under rule 51, where new facts are alleged by the defendant, the libelant is authorized to "amend his libel so as to confess and avoid or explain or add to new matter set forth in the answer," but he is not required to do so; and the court cannot require the libel to be amended by confessing matters which may not be true, or which the libelant may not know to be true. Nor can the libel be excepted to for insufficiency; for it is sufficient on its face, though the contract by the bill of lading was in truth not at all what the libel asserts, viz., to deliver the cargo in like good order and condition; but on the contrary, was only an agreement so to deliver subject to many exceptions and qualifications.

In any rational system of pleading, it is essential that the subject of litigation shall be reasonably defined, in order that the parties may know what they have to meet, that the case may be presented with intelligence, and the record restricted within appropriate limits, and useless expense avoided. It is the duty of the court to promote this end in all appropriate ways, in furtherance of justice, in pursuance of rule 46 and section 918 of the Revised Statutes.

A partial remedy may, I think, be appropriately sought by interrogatories annexed to the answer, as in this case. Rule 32 authorizes such interrogatories "touching any matters charged in the libel, or touching any of the matters set up in the answer." Such interrogatories, derived from the practice of the civil law, are designed to supersede the necessity of proof, and to bring out distinctly before the court the point on which the defense or claim is intended to be rested. Story, Eq. Pl. §§ 35, 37, 39; Gammell v. Skinner, 2 Gall. 45, Fed. Cas. No. 5,210. See, also, Havermeyers, etc., Co. v. Compania, etc., 43 Fed. 90; The Serapis, 37 Fed. 442.

The interrogatories in this case are brief and to the point. The defendant, in his answer, has professedly given a full account of the way in which the damage occurred. If the libelants, in order to avoid the legal results of the facts stated in the answer, rely on any other supposed negligence of the officers or men, or of the ship, or on a lack of seaworthiness, or of due diligence to put the ship in a seaworthy condition before she sailed, those points should be set forth so far as is reasonably within the power of the libelants, and the issues be thus defined.

No exceptions being taken to the mere form of the interrogatories, the exceptions to all of them, except the fourth and sixth interrogatories, which are withdrawn, are overruled, and the libelants are directed to answer.